# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SANDRA SWITZER,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

1:18-cv-16554-NLH

**OPINION**

**APPEARANCES:**

KATHRYNE H. POPE
RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002

    *On behalf of Plaintiff*

LAUREN DONNER CHAIT
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN ST
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section
205(g) of the Social Security Act, as amended, 42 U.S.C. §
405(g), regarding Plaintiff's application for Disability
Insurance Benefits ("DIB")[1] under Title II of the Social

---

[1] DIB is a program under the Social Security Act to provide

Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, May 5, 2012.  For the reasons stated below, this Court will affirm that decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On February 21, 2014, Plaintiff, Sandra L. Switzer, protectively filed an application for DIB,[2] alleging that she became disabled on May 5, 2012.  Plaintiff claims that she can no longer work as a government benefits eligibility worker because of her degenerative disc and joint disease, fibromyalgia, and depression, among other impairments.

After Plaintiff's claim was denied initially upon reconsideration, Plaintiff requested a hearing before an ALJ, which was held on April 10, 2017.  On August 22, 2017, the ALJ

---

disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant made a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

issued an unfavorable decision.  Plaintiff's Request for
Review of Hearing Decision was denied by the Appeals Council
on September 27, 2018, making the ALJ's August 22, 2017
decision final.  Plaintiff brings this civil action for review
of the Commissioner's decision.

## II.  DISCUSSION

### A.    Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for social security benefits.  Ventura v. Shalala,
55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must
uphold the Commissioner's factual decisions where they are
supported by "substantial evidence."  42 U.S.C. §§ 405(g),
1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.
2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000);
Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).
Substantial evidence means more than "a mere scintilla."
Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting
Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).
It means "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  Id.  The inquiry
is not whether the reviewing court would have made the same
determination, but whether the Commissioner's conclusion was

reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful

court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart,

94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial

review, a district court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-

finder." Williams, 970 F.2d at 1182. However, apart from the

substantial evidence inquiry, a reviewing court is entitled to

satisfy itself that the Commissioner arrived at his decision

by application of the proper legal standards. Sykes, 228 F.3d

at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir.

1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

### B.    Standard for DIB

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability

insurance benefits as the inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be
expected to result in death, or which has lasted or can be
expected to last for a continuous period of not less than 12
months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this
definition, a Plaintiff qualifies as disabled only if her
physical or mental impairments are of such severity that she
is not only unable to perform her past relevant work, but
cannot, given her age, education, and work experience, engage
in any other type of substantial gainful work which exists in
the national economy, regardless of whether such work exists
in the immediate area in which she lives, or whether a
specific job vacancy exists for her, or whether she would be
hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

     The Commissioner has promulgated regulations[3] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-
step process is summarized as follows:

     1.   If the claimant currently is engaged in substantial

_____

[3] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  The parties do not
indicate that any of the amendments are applicable to the
issues presented by Plaintiff's appeal.

gainful employment, she will be found "not
disabled."

2.    If the claimant does not suffer from a "severe
impairment," she will be found "not disabled."

3.    If the severe impairment meets or equals a listed
impairment in 20 C.F.R. Part 404, Subpart P,
Appendix 1 <u>and</u> has lasted or is expected to last for
a continuous period of at least twelve months, the
claimant will be found "disabled."

4.    If the claimant can still perform work she has done
in the past ("past relevant work") despite the
severe impairment, she will be found "not disabled."

5.    Finally, the Commissioner will consider the
claimant's ability to perform work ("residual
functional capacity"), age, education, and past work
experience to determine whether or not she is
capable of performing other work which exists in the
national economy. If she is incapable, she will be
found "disabled." If she is capable, she will be
found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

This five-step process involves a shifting burden of

proof. <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722

F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of

the analysis, the burden is on the claimant to prove every

element of her claim by a preponderance of the evidence. <u>See</u>

<u>id.</u> In the final step, the Commissioner bears the burden of

proving that work is available for the Plaintiff: "Once a

claimant has proved that he is unable to perform his former

7

job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir. 1987); <u>see</u> <u>Olsen v. Schweiker</u>, 703 F.2d 751, 753 (3d Cir. 1983).

## C.  Analysis

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  At step two, the ALJ found that Plaintiff's impairments of degenerative disc and joint disease, radiculopathy, diabetes mellitus, and chronic pain syndrome were severe.  At step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.  The ALJ then determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with certain restrictions, which included Plaintiff's past relevant work as a government benefits eligibility worker (step four),[4] and was therefore not

---

[4] The ALJ referred to Plaintiff's past work as an "income maintenance worker" and cited to DOT code 195.267-010.  That code is titled "ELIGIBILITY WORKER (government ser.)."  Plaintiff points out this discrepancy, but does not argue that it substantively affects her appeal.

disabled.[5]

Plaintiff presents five issues on appeal: (1) Whether the ALJ erred in his evaluation of Plaintiff's mental impairments; (2) Whether the ALJ erred in his assessment of Plaintiff's fibromyalgia; (3) Whether ALJ erred in failing to include limitations in his RFC assessment related to Plaintiff's need to use assistive devices to balance and ambulate; (4) Whether the ALJ failed to properly weigh the relevant, non-medical evidence; and (5) Whether the ALJ mischaracterized and was factually inaccurate in his treatment of Plaintiff's Adult Function Report.

All of these arguments present various reasons for why the ALJ's assessment of Plaintiff's RFC was incorrect. Thus, the Court will present the ALJ's RFC determination, and explain why each of Plaintiff's arguments is unavailing.

A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding is a determination expressly reserved to the Commissioner, 20

---

[5] Because the ALJ concluded that Plaintiff was capable of performing her past relevant work, the ALJ did not need to continue to step five of the sequential step analysis. Benjamin v. Commissioner of Social Security, 2019 WL 351897, at *4 n.9 (D.N.J. 2019) (citing Valenti v. Commissioner of Social Sec., 373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. § 404.1520(b)-(f)).

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c),

416.946(c).  The ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform a range of light work as
> defined in 20 CFR 404.1567(b).  Specifically, the
> claimant can lift and carry 20 pounds occasionally and 10
> pounds frequently.  She can sit for six hours; stand for
> four hours; and walk for four hours.  She can push/pull
> as much as she can lift/carry.  With regard to postural
> limitations, the claimant can climb ramps and stairs
> occasionally.  She can never climb ladders, ropes, or
> scaffolds.  She can balance occasionally and stoop
> occasionally.  She can never kneel.  She can crouch
> occasionally.  She can never crawl.  As for her
> environmental limitations, the claimant can never work at
> unprotected heights.

(R. at 15.)

When making this RFC determination, the ALJ was required

to:

> [C]onsider all your symptoms, including pain, and the
> extent to which your symptoms can reasonably be accepted
> as consistent with the objective medical evidence and
> other evidence.  By objective medical evidence, we mean
> medical signs and laboratory findings . . . .  By other
> evidence, we mean . . . statements or reports from you,
> your treating or nontreating source, and others about
> your medical history, diagnosis, prescribed treatment,
> daily activities, efforts to work, and any other evidence
> showing how your impairment(s) and any related symptoms
> affect your ability to work. . . .

20 C.F.R. § 404.1529.

Additionally, the RFC assessment takes into consideration

all of a claimant's medically determinable impairments in

combination, including those that the ALJ has found to be

severe, as well as those that are not deemed to be severe at Step Two.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

### 1. Fibromyalgia and depression

Plaintiff argues that the ALJ failed to find her fibromyalgia and depression to be medically determinable impairments.  By failing to do so, Plaintiff argues that the ALJ's RFC assessment does not accurately represent the effects of all her impairments, severe or not, which is an assessment the ALJ is required to make.  Relatedly, Plaintiff argues that the cognitive weaknesses caused by fibromyalgia and the mental impairments caused by depression were not considered by the ALJ in his RFC determination, which was also in error.

For Plaintiff's fibromyalgia, the ALJ noted that her "alleged fibromyalgia fails to meet the criteria of SSR 12-2p." (R. at 15.)  For Plaintiff's depression, the ALJ observed that "although it is noted in Exhibit 9F, there are no other records to confirm this diagnosis.  Moreover, there are no treatment notes for this alleged condition and she

failed to allege it at the hearing." (Id.)  This Court

concludes that the ALJ did not commit error with regard to his

assessment of Plaintiff's claim of fibromyalgia and depression

and the cognitive impairments that allegedly resulted from

those conditions.

Plaintiff argues that evidence of her chronic, widespread

pain, along with her fibromyalgia diagnosis by two doctors,

demonstrates that she suffers from fibromyalgia.  It is not

that simple.  SSR 12-2p explains: (1) "FM is a complex medical

condition characterized primarily by widespread pain in the

joints, muscles, tendons, or nearby soft tissues that has

persisted for at least 3 months"; (2) "We cannot rely upon the

physician's diagnosis alone"; and (3) "Other physical and

mental disorders may have symptoms or signs that are the same

or similar to those resulting from FM.  Therefore, it is

common in cases involving FM to find evidence of examinations

and testing that rule out other disorders that could account

for the person's symptoms and signs."  SSR 12-2p provides an

extensive checklist of criteria from the American College of

Rheumatology (ACR) to determine whether a claimant suffers

from fibromyalgia separate from, or in addition to, other

impairments.[6]

---

[6] https://www.ssa.gov/OP_Home/rulings/di/01/SSR2012-02-di-

In this case, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc and joint disease and chronic pain syndrome. (R. at 14.) The ALJ noted, "the record confirms chronic back and knee pain." (R. at 17.) Even though two of Plaintiff's treating physicians (a general practitioner and orthopedist) and one state consultant (an orthopedist) listed fibromyalgia as one of Plaintiff's conditions, none of these physicians are rheumatologists, they did not set forth any of the ACR's criteria for diagnosing fibromyalgia, and fibromyalgia was listed in conclusory fashion in addition to several other conditions, including an extensive history of objective diagnostic findings of lumbar disc disease and radiculopathy. (R. at 381, 402, 416.)

Moreover, Plaintiff points to no medical records that demonstrate Plaintiff's "chronic pain" is a result of fibromyalgia and not her other severe impairments. See, e.g., Friedman v. Berryhill, 2019 WL 1418132, at *10 (D.N.J. 2019) ("The ALJ's conclusions with respect to the non-severity of Plaintiff's fibromyalgia are supported by substantial evidence, because the medical record demonstrates that Plaintiff's diagnosis also included rheumatoid arthritis, which can cause similar symptoms to fibromyalgia. Indeed,

_____

01.html.

Plaintiff does not dispute that the record is devoid of any objective medical evidence to support that her symptoms are only caused by fibromyalgia.  In the absence of such medical information, the ALJ did not error by classifying Plaintiff's fibromyalgia as a non-severe impairment.").[7]

The Court therefore finds that the ALJ did not err by finding that Plaintiff did not suffer from fibromyalgia as a medically determinable impairment.

---

[7] See also Trauterman v. Commissioner of Social Sec., 296 F. App'x 218, 220–21 (3d Cir. 2008), affirming the ALJ's finding that the plaintiff's claim of disability was not attributed exclusively to fibromyalgia:

> In addition to his diagnosis of fibromyalgia, Dr. Schibli found that Trauterman suffered from cervical spine disc herniation, lumbar spine degenerative joint disease, and carpal tunnel syndrome.  In light of these diagnoses, it was quite appropriate for the ALJ to consider the objective medical evidence of record.  After doing so, the ALJ found that Dr. Schibli's diagnosis of cervical spine disc herniation was contrary to Trauterman's January 2004 cervical MRI.  The ALJ also found that the lumbar spine degenerative joint disease was confirmed to be "minimal" and "mild" based on the lumbar MRI. After our independent review of the record, we find that these conclusions are supported by substantial evidence.
>
> The ALJ also concluded that Trauterman's activities of daily living and subjective complaints of pain were, in some respects, contrary to the medical evidence.  These findings are supported by substantial evidence for the reasons articulated by the ALJ at pages 17 and 25 of the record.  Accordingly, we cannot agree with Trauterman's argument that the ALJ misapprehended the nature of fibromyalgia and applied the incorrect legal standard.

The same is true for Plaintiff's depression.  The only
record of Plaintiff's alleged depression is on a medical
source statement on a check-the-box form[8] by Plaintiff's
treating physician, Dr. Godleski.  On that form, Dr. Godleski
lists Plaintiff's diagnoses as "lumbar radiculopathy,
fibromyalgia, HTN Type 2 DM, hypercholesterolemia, chronic
pain."  (R. at 381.)  He does not include "depression" on the
list of diagnosed conditions.  Later on the form, Dr. Godleski
checks the box for "depression" to answer the question of
whether Plaintiff has "any psychological conditions which you
believe are affecting and/or your patient's physical condition
resulting from."  (R. at 383.)  Plaintiff points to no other
documentation in the record that references Plaintiff's
depression so that it can be considered a medically
determinable impairment, and one check mark on a form does not
establish such an impairment.  See 20 C.F.R. § 404.1529; POMS,
DI 25205.005 Evidence of a Medically Determinable Impairment

---

[8] Dr. Godleski's opinion was provided on a form, which is
considered "weak evidence."  Stelzer v. Commissioner of Social
Security, 2019 WL 950165, at *6 (D.N.J. 2019) (citing Mason v.
Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in
which a physician's obligation is only to check a box or fill
in a blank are weak evidence at best."); Zonak v. Commissioner
of Social Sec., 290 F. App'x 493, 497 (3d Cir. 2008)
(affirming the ALJ's rejection of the plaintiff's treating
physician's opinion because it was provided on a check-box
form and no reasons were given in support of the doctor's
conclusion on that form)).

("A medically determinable physical or mental impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. The impairment must be established by objective medical evidence (signs, laboratory findings, or both) from an acceptable medical source, not on an individual's statement of symptoms."). The Court finds that the ALJ did not err by finding Plaintiff's depression not to be a medically determinable impairment.

Because the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's fibromyalgia and depression were not medically determinable impairments, the ALJ consequently did not err by not including those conditions in  the RFC analysis. See 20 C.F.R. § 404.1545(a)(2) (explaining that in the RFC analysis, the ALJ must consider severe and non-severe medically determinable impairments when the ALJ assess a claimant's residual functional capacity, and by extrapolation, the ALJ does not need to consider any alleged conditions that are not medically determinable).[9]

_____

[9] Even if the ALJ erred in not considering Plaintiff's fibromyalgia or depression to be severe, or any medically determinable impairments at all, the record evidence shows that whatever impairments Plaintiff suffered from did not render her disabled. See, *infra*, the Court's discussion

16

### 2. Pain

Although Plaintiff does not specifically state a basis for appeal regarding the ALJ's consideration of her pain, in her brief Plaintiff argues that the ALJ's RFC did not consider her chronic pain because it did not account for any mental limitations due to pain and the side-effects of Plaintiff's pain medication. The record evidence argued by Plaintiff that supports the nature of her pain and the side-effects of the pain medication is from Plaintiff's own testimony, Plaintiff's self-completed adult function report, the statements of Plaintiff's two sisters, and the opinion of Dr. Godleski.

Plaintiff points to her testimony at the hearing that she is only able to sit for about an hour before her pain becomes distracting and takes her off task, and Plaintiff notes that she reported to her doctors that her medications made her drowsy. (R. at 34-35.) Plaintiff also points to her adult function report, which states that she is in pain constantly. (R. at 195.) Plaintiff further relies upon the third-party function report of one of her sisters, which was completed on an almost identical form to Plaintiff's adult function report and the content mirrors Plaintiff's adult function report.

_____

regarding Plaintiff's pain, her use of a cane, the testimony of her family, and her self-reported adult function report.

(R. at 201.)  Plaintiff's other sister wrote a letter, which
contains observations similar to Plaintiff's adult function
report.  (R. at 250.)

Additionally, Plaintiff contends that Dr. Godleski opined
that Plaintiff would be off-task 25% on a typical workday, and
that Plaintiff would be off-task up to 33% from drowsiness and
confusion from her medication.  (R. at 382-33.)  Plaintiff
argues that the ALJ did not properly credit these findings in
his formulation of her RFC.

The record does not reflect exactly what Plaintiff
argues.  The ALJ noted - and credited - Dr. Godleski's finding
on the medical source statement that the side effects of
Plaintiff's medication would be "mildly troublesome," with
"difficulty focusing/concentrating for occasional (6% to 33%
of an 8-hour workday) periods of time."  (R. at 18, 382.)  The
ALJ did not credit Dr. Godleski checking the box, however, for
the maximum amount, 25% or more, that Plaintiff would be off-
task when considering all her symptoms, out of the other five
options of 0%, 5%, 10%, 15%, and 20%.  (R. at 18, 283.)  The
ALJ also did not credit Dr. Godleski's finding that Plaintiff
would need to lie down 1.5 - 2 hours a day.  (R. at 18, 382.)
The ALJ recounted Plaintiff's testimony and her function
report, and found that she experienced pain (R. at 16), but

found that her statements concerning the intensity, persistence and limiting effects of her pain not to be entirely consistent with the medical and other record evidence (R. at 17).

The support for the weight the ALJ afforded to Dr. Godleski's opinions, and the ALJ's assessment of Plaintiff's testimony and the statements of her sisters, derives from the ALJ's analysis of the objective medical evidence. The record shows that Plaintiff suffers from bilateral radiculopathies and degenerative disc and joint disease, but medical reports from May 2011 through August 2016 show that Plaintiff still had a full range of motion in her upper and lower extremities, she exhibited moderate difficulty in climbing onto the exam table but sat without discomfort, she was not in acute distress, her knees and ankles were stable, and her degenerative condition was mild. (R. at 17-18.)

Plaintiff also reported that even though she experiences pain if she does too much, she was able to drive 10-15 minutes a day, she had no difficulty in personal care, she cooked meals,[10] entertained guests for up to four hours, traveled to

_____

[10] Plaintiff argues that the ALJ mischaracterized her ability to cook meals and tend to her personal care. Plaintiff points to her adult function report, which provides she makes "sandwiches, complete meals when I'm up to it maybe twice a week," and states that is a change due to her disability

Disney World, and shopped while holding onto a shopping cart.
(R. at 17.)  Plaintiff's sisters also reported that even
though Plaintiff was in pain, she was still able to cook,
vacuum, drive, entertain, and shop.  (R. at 16, 201, 250.)

A "cardinal principle guiding disability eligibility
determinations is that the ALJ accord treating physicians'
reports great weight, especially when their opinions reflect
expert judgment based on a continuing observation of the
patient's condition over a prolonged period of time," Morales
v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (citations and
quotations omitted), but an ALJ may reduce his reliance upon a
treating physician's opinions if those opinions are

_____

because she used to cook a full course meal every day.  (R. at
195.)  She also reported that "when I'm in severe pain and
spasms then I don't bathe or dress until I'm feeling better."
(R. at 194.)  The Court does not find the ALJ's conclusion
that Plaintiff "cooks meals" to be an improper
mischaracterization, particularly because on her adult
function report Plaintiff stated that she cook complete meals
when she is "up to it maybe 2x week."  (R. at 195.)  The Court
also does not find that the ALJ erred in stating that
Plaintiff "has no difficulty with her personal care" because
Plaintiff points to no evidence that she is unable to
independently manage her personal care needs despite her pain,
and on her adult function report, Plaintiff checked the box
for "NO PROBLEM with personal care."  (R. at 194.)  Cf. Jackson
v. Berryhill, 2019 WL 1417244, at *2 (D.N.J. 2019) (affirming
the ALJ's RFC determination that the plaintiff had no
difficulty with daily living activities even though the
plaintiff reported that she had trouble managing her personal
care needs because of pain because she still tended to those
needs herself).

inconsistent with other medical evidence, and if he explains
his reasoning.  Plummer v. Apfel, 186 F.3d 422, 439 (3d Cir.
1999) ("[A]n ALJ is permitted to accept or reject all or part
of any medical source's opinion, as long as the ALJ supports
his assessment with substantial evidence."), cited by
Brownawell v. Commissioner, 554 F.3d 352, 355 (3d Cir. 2008));
Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("We are
also cognizant that when the medical testimony or conclusions
are conflicting, the ALJ is not only entitled but required to
choose between them.... [W]e need from the ALJ not only an
expression of the evidence s/he considered which supports the
result, but also some indication of the evidence which was
rejected.").  The ALJ properly followed those requirements
here with regard to Dr. Godleski's opinions.

     As for Plaintiff's testimony and self-reports about her
pain, the ALJ properly supported his assessment of Plaintiff's
statements and those of her sisters with reference to the
medical evidence to contrast Plaintiff's complaints with her
daily activities and the medical evidence.  See Sasse v.
Commissioner of Social Security, 2019 WL 1233553, at *7
(D.N.J. 2019) (explaining that effective March 26, 2016, the
SSA issued Social Security Ruling 16-3p, which superseded SSR
96-7p, to eliminate the use of the term "credibility," but

even though SSR 16–3p clarifies that adjudicators should not make statements about an individual's truthfulness, the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same); SSR 16-3-p ("An individual's statements may address the frequency and duration of the symptoms, the location of the symptoms, and the impact of the symptoms on the ability to perform daily living activities. An individual's statements may also include activities that precipitate or aggravate the symptoms, medications and treatments used, and other methods used to alleviate the symptoms. We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with objective medical evidence and the other evidence.").

Plaintiff may disagree with the ALJ's assessment of the medical evidence and Plaintiff's statements about her pain, but the Court cannot find that the ALJ erred in this regard.[11]

--------------------

[11] Plaintiff specifically argues that the ALJ improperly discounted the statements of her sisters when he related, "Although these opinions of laypeople have been considered, the undersigned finds these individuals cannot be considered impartial. Moreover, these individuals are not experts in disability or familiar with the process. Additionally, their opinions are statements are inconsistent with the testimony offered at the hearing." (R. at 18.) Plaintiff takes issue with the fact that most third-party function reports provided

### 3.  Plaintiff's use of a cane

Plaintiff argues that the record demonstrates she is required to use a cane, and often a wheelchair, to assist in her mobility, and the ALJ's failure to accommodate this requirement in the RFC is reversible error.  The Court does not agree.

Social Security Regulations provide, "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all

---

by family members would not be considered impartial and those family members are not likely to be experts in disability. Those factors, however, are two that the ALJ was required to consider when assessing lay evidence.  <u>See</u> SSR 06-03p (effective for claims filed before March 27, 2017, 82 F.R. 5844) (providing six factors when considering "other nonmedical sources": How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; Whether the source has a specialty or area of expertise related to the individual's impairment(s); Any other factors that tend to support or refute the opinion).  Moreover, the ALJ properly explained how Plaintiff's sisters' statements were not fully supported by the other evidence in the record.  <u>See</u> Zirnsak v. Colvin, 777 F.3d 607, 613 (3d Cir. 2014) ("In evaluating the lay testimony of Zirnsak's family, friends, and husband, the ALJ explicitly followed the guidance set forth in SSR 06-03p.  He evaluated the relevant factors, assessed the credibility of certain evidence, and explained why he found certain evidence to be not credible.").

the time, periodically, or only in certain situations;
distance and terrain; and any other relevant information).
The adjudicator must always consider the particular facts of a
case." SSR 96-9p (explaining how an ALJ evaluates a
claimant's use of a hand-held assistive device in the context
of determining whether the use of such a device erodes the
occupational base at the sedentary level).

In this case, Plaintiff testified at the hearing that a
cane was not prescribed by a doctor. (R. at 39.) It
therefore cannot be determined to be "medically required."
Plaintiff's reports of her daily living activities also do not
relate that Plaintiff required the use of a cane when she
performed such activities, such as cooking and cleaning.
Additionally, the record shows that Plaintiff regularly did
not use a cane. For example, during her March 2015
independent orthopedic examination, Plaintiff did not use a
cane or crutches. (R. at 17.) Thus, Plaintiff has not shown
that the ALJ erred by not accounting for her use of a cane in
his RFC determination. See, e.g., Howze v. Barnhart, 53 F.
App'x 218, 222 (3d Cir. 2002) ("Appellant's argument that
remand is necessary because the ALJ failed to address the fact
that he uses a medically-required hand-held device fails as
well. He testified that Dr. Kahn provided him with a cane to

address left-leg weakness which causes him to lose his balance
and fall.  The references in the record include a reference by
Dr. Khan to a 'script' for a cane; in addition, Dr. Khan
checked the box for 'hand-held assistive device medically
required for ambulation' in his 1998 report. Other than that,
there are multiple references to the fact that appellant uses
a cane but no discussion of its medical necessity.  The
evidence presented by appellant was insufficient to support a
finding that his cane was medically necessary."); Rodriguez v.
Commissioner of Social Security, 2017 WL 935442, at *7 (D.N.J.
2017) ("Dr. Dagnino, Plaintiff's doctor at CURA, Inc.,
prescribed a wooden cane.  However, the treatment record does
not indicate that the cane is in fact medically necessary. In
addition, various other medical reports indicated that
Plaintiff's gait was normal.  Plaintiff also admitted that he
is able to walk two to three blocks without the cane.  This
evidence counters Plaintiff's claim that the cane was
medically necessary."); Smelly v. Commissioner of Social Sec.,
2013 WL 3223000, at *7 (D.N.J. 2013) (finding that the record
did not show unequivocally that Plaintiff needs a cane on a
regular, consistent basis).

## III. Conclusion

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations. <u>Hartzell v. Astrue</u>, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal is that a district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). For the foregoing reasons, the ALJ's determination that Plaintiff was not totally disabled as of May 5, 2012 is supported by substantial evidence. The decision of the ALJ will therefore be affirmed. An accompanying Order will be issued.


Date: <u>October 24, 2019</u>          <u>s/ Noel L. Hillman</u>
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.